UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

CHRISTOPHER A.,

Plaintiff,

Case No. 6:25-cv-00464-YY

v.

OPINION AND ORDER

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

Defendant.

---

YOU, Magistrate Judge.

Plaintiff Christopher A. seeks judicial review of the Commissioner's final decision denying Social Security disability benefits. Plaintiff asserts the Administrative Law Judge erred by failing to account for hand limitations in the residual functional capacity ("RFC"), improperly evaluating medical opinion testimony, and discounting plaintiff's subjective symptom testimony and the statements of lay witnesses. The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). With that standard of review applied, the Commissioner's decision is AFFIRMED.

//

//

## I. Hand Limitations

Plaintiff contends the ALJ erred by concluding that his right thumb osteoarthritis did not satisfy the twelve-month "duration requirement" and by failing to include restrictions in the RFC to account for this condition. Plaintiff argues that, as a result, an incomplete hypothetical was posed to the vocational expert ("VE") and the Commissioner failed to meet the burden at step five. The Commissioner argues the ALJ reasonably concluded there were no lingering functional limitations following surgery on plaintiff's right thumb in August 2021 and that additional limitations were not justified.

At step two of the five-step sequential inquiry, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments. *Smolen v. Chater*, 80 F.3d 1273, 1289–90 (9th Cir. 1996). The step two inquiry is a *de minimis* screening device used to dispose of groundless claims. *Bowen v. Yuckert*, 482 U.S. 137, 153–54 (1987). The claimant bears the burden of establishing the existence of a severe impairment with objective medical evidence. 20 C.F.R. § 404.1512(a).

An impairment is "not severe" if it does not "significantly limit" a claimant's ability to conduct basic work activities. 20 C.F.R. § 404.1520(c); *see also Sullivan v. Zebley*, 493 U.S. 521, 525 (1990). Basic work activities are "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Smolen*, 80 F.3d at 1290 (citing 20 C.F.R. § 140.1521(b)); Social Security Ruling 85–28. "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen*, 80 F.3d at 1290 (citing SSR 85–28; *Yuckert v. Bowen,* 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85–28)). To be severe at step two, an impairment

must also satisfy the "duration requirement," i.e., it "must have lasted or must be expected to last for a continuous period of at least 12 months." *See* 20 C.F.R. § 404.1509, 404.1520(a)(4)(ii). If an ALJ fails to properly identify a severe impairment at step two but nonetheless considers the erroneously omitted impairment at subsequent steps of the sequential process, the step two error is harmless. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

The ALJ found that plaintiff's bilateral thumb osteoarthritis was not a severe impairment at step two. The ALJ made the following observations: Plaintiff had a "history of bilateral thumb osteoarthritis" and underwent surgery on his left hand in January 2020. Tr. 37. Since the onset date of June 2020, he also reported right thumb pain and could not make a fist. *Id.* An x-ray from April 2021 showed severe degenerative changes in plaintiff's right hand. In July 2021, plaintiff reported that his recovery from his left hand surgery was "great" and he was pleased with the results. Tr. 37 (citing Tr. 1139). Plaintiff had right hand surgery in August 2021, and chart notes show that plaintiff's numbness and pain were resolving. Tr. 37 (citing Tr. 1208–13); *see* Tr. 1211 ("can wiggle fingers, sensation returning," and pain level of zero). A September 2021 report by consultative examiner Dr. Georgia Wilcox indicated: "Gross motor activity appeared normal. There was no evidence of physical discomfort or pain. He denied experiencing physical pain." Tr. 37 (citing Tr. 1426). Records from an internal medicine consultative examination in October 2021 indicate plaintiff exhibited 5/5 strength in all areas, including hand grip, the range of motion of in his hands was normal, and a musculoskeletal exam noted no joint swelling, tenderness, or deformity, and the examiner concluded that he could lift, carry, and handle light objects. Tr. 37 (citing Tr. 1447–56). In November 2021, plaintiff used only 5 of 15 authorized occupational therapy visits and, in January 2022, the status of his occupational therapy was "unclear." Tr. 37 (citing Tr. 1499).

The ALJ found that "improvement with surgery suggests that these impairments did not satisfy . . . the 'duration requirement,'" i.e., the requirement "that an impairment must have lasted or must be expected to last for a continuous period of at least 12 months." Tr. 38. The ALJ did not make clear how improvement following surgery establishes that plaintiff's right thumb osteoarthritis failed to satisfy the durational requirement. The record indicates that plaintiff was suffering from right hand pain since before the onset date of June 2020 and until surgery was performed on his right hand in August 2021. Thus, plaintiff's right thumb osteoarthritis appears to have met the 12-month durational requirement.

"Alternatively," the ALJ found that the September 2021 "consultative examination do[es] not support more than a minimal impact in [plaintiff's] ability to perform basic work activities, and these impairments are sufficiently considered in the residual functional capacity limitations to lift and carry no more than 25 pounds occasionally and lift and carry up to 10 pounds frequently with the additional limitations in the residual functional capacity assessed herein." Tr. 38; *see also* Tr. 36 (explaining the ALJ considered whether plaintiff's bilateral thumb osteoarthritis "caus[ed] more than a minimal effect on [plaintiff's] physical or mental ability to perform basic work activities" and found "there is no objective evidence that [plaintiff] has ongoing problems or that he continues to require extensive treatment due to" his osteoarthritis).

The RFC is what a person "can still do despite [the individual's] limitations" and is assessed "based on all the relevant evidence in [the] case record." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a) (2003). Here, the ALJ cited to the consultative examiner's findings that, after surgery, plaintiff had no pain or discomfort, 5/5 strength, normal range of motion, and no swelling or tenderness. Due to the improvement in plaintiff's condition following surgery, the ALJ did not include any manipulative limitations in the RFC. Thus, any error in finding that plaintiff's

osteoarthritis was non-severe based on failure to meet the durational requirement was harmless. *See Giebudowski v. Colvin*, 981 F. Supp. 2d 765, 772 (N.D. Ill. 2013) (finding ALJ did not err by not including a limitation for plaintiff's severe elbow condition following surgery where he made "excellent progress in controlling the . . . elbow pain through the use of injections"); *see* Def. Br. 7 (arguing "the ALJ thoroughly analyzed Plaintiff's hand impairments, so the residual functional capacity finding would 'be exactly the same regardless of whether' the impairment was "considered 'severe' or not") (quoting *Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017)).

## II. Medical Opinion Evidence

### A. Standard Regarding Evaluation of Medical Opinion Evidence

When evaluating medical opinion evidence for claims filed on or after March 27, 2017, ALJs must apply 20 C.F.R. § 404.1520c for Title II claims and 20 C.F.R. § 416.920c for Title XVI claims. *Revisions to Rules Regarding the Evaluation of Medical Evidence* (*Revisions to Rules*), 82 Fed. Reg. 5844, *available at* 2017 WL 168819 (Jan. 18, 2017). Under these regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). To that end, controlling weight is no longer given to any medical opinion. *Revisions to Rules*, 82 Fed. Reg. at 5867-68; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner evaluates the persuasiveness of medical opinions based on (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5), 416.920c(a), (c)(1)-(5).

The factors of "supportability" and "consistency" are considered to be "the most important factors" in the evaluation process. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence." *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)(1)). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* (citing 20 C.F.R § 404.1520c(c)(2)).

An ALJ must articulate how persuasive the ALJ finds the medical opinions and explain how the ALJ considered the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(a), (b), 416.920c(a), (b); *see Tyrone W. v. Saul*, No. 3:19-CV-01719-IM, 2020 WL 6363839, at *7 (D. Or. Oct. 28, 2020). "The ALJ may but is not required to explain how other factors were considered, as appropriate, including relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination); whether there is an examining relationship; specialization; and other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements." *Linda F. v. Comm'r Soc. Sec. Admin.*, No. C20-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020). However, ALJs are required to explain "how they considered other secondary medical factors [if] they find that two or more medical opinions about the same issue are equally supported and consistent with the record but not identical." *Tyrone W.*, 2020 WL 6363839, at *6 (citing 20 C.F.R. §§ 404.1520c(b)(2) and 404.1520c(b)(3)).

Furthermore, the court must continue to consider whether the ALJ's decision is supported by substantial evidence. *See Revisions to Rules*, 82 Fed. Reg. at 5852 ("Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we

gave treating source opinions, rather than on whether substantial evidence supports our final decision."); *see also* 42 U.S.C. § 405(g).

**B. Danny Durbin, QMHP/MS**

Plaintiff began treatment with counselor Danny Durbin in August 2022. Durbin completed a questionnaire in August 2023, after treating plaintiff approximately once a week for a year. Tr. 2002. Durbin opined that plaintiff would be able to handle a low-stress part-time job, but anything beyond that would exacerbate his mental and medical conditions. Tr. 2003. Plaintiff and his wife reported to Durbin that plaintiff's personality had changed since he suffered a brain aneurysm in 2020. His ability to regulate his emotions was severely impacted and he had become hyperfocused on politics and religion, which were behaviors that Durbin also observed during the therapeutic relationship. Durbin stated that "[m]ost notably, [plaintiff was] often circumstantial in his thought throughout sessions." Tr. 2008. Durbin opined that plaintiff would be unable to maintain a regular work schedule more than four days a month. *Id.*

The ALJ found that Durbin's opinion was "unpersuasive" for a number of reasons, including because Durbin's limitations were inconsistent with his own treatment notes. Tr. 51. The ALJ cited to Durbin's treatment notes from September 2023 indicating improvement because plaintiff exhibited typical attention, *see* Tr. 2043, and an improvement in memory, which was noted to be intact and no longer limited, *see* Tr. 2039, 2043, and there were no signs of restlessness of motor activity, *see id.*. Additionally, the ALJ observed that while the treatment notes from October and November 2023 "reflect some variability," there were "no significant changes from the prior mental status exams." Tr. 52. The ALJ's conclusion that Durbin's opinion was inconsistent with his own records was a rational interpretation of the record, and inconsistency with a provider's own treatment records is a valid basis to reject medical opinion

testimony. *Smith v. Berryhill*, No. 2:16-CV-1247-SI, 2017 WL 1502799, at *11 (D. Or. Apr. 26, 2017) ("It was [a] rational interpretation of the record for the ALJ to find that Dr. Broyhill's medical opinion was inconsistent with the record and deserved less than controlling weight."); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (concluding that the incongruity between a doctor's opinion and her medical records was a specific and legitimate reason for rejecting the doctor's limitations).

The ALJ also found that Durbin's opinion was not supported by the treatment notes of other mental health practitioners. The ALJ pointed to VA mental health records from March 28, 2022, reflecting plaintiff presented with coherent thought content, linear and logical thought processes, fair insight and judgment, and no signs of suicidal ideation. Tr. 51 (citing Tr. 1592). Additionally, the ALJ pointed to a consultative examination with Carolyn Ferreira, Psy.D., in December 2023, and observed that Dr. Ferreira found plaintiff's performance on intelligence testing was significantly better than individuals with traumatic brain injury, with an IQ score in the average range. Tr. 52. The ALJ noted that Dr. Ferreira observed plaintiff exhibited some difficulty with recall, but his fund of knowledge was intact, he was able to stay focused on testing, and he exhibited intact abstract thinking, judgment, and insight. Tr. 52. The ALJ further noted that Dr. Ferreira opined plaintiff had no limitations in his ability to understand, remember, and carry out simple instructions, or make judgments on simple work-related decisions, had only mild limitations with complex instructions and decisions, had no limitations interacting with the public, coworkers, and supervisor, and had mild limitations responding to usual work situations and changes in a routine work setting. Tr. 53. The ALJ found that Dr. Ferreira's opinions were "generally, though not entirely persuasive as the evidence supports the ability to understand, remember, and carry out simple instructions, or make judgments on simple work-related

decisions," but the ALJ concluded that the treatment history and ongoing allegations further limit plaintiff in terms of complex tasks. Tr. 53. This was a rational interpretation of the record. The ALJ did not err in finding Durbin's opinion was unpersuasive because it was inconsistent with other medical professionals' opinions and observations. It is unnecessary to examine the other reasons that the ALJ gave for rejecting Durbin's opinion.

### C. Georgia Wilcox, PsyD

Plaintiff attended a consultative examination for two hours with Dr. Wilcox in September 2021. Dr. Wilcox recommended further neuropsychological testing to more accurately assess post-brain injury deficits but opined that "initial screening indicates that [plaintiff] cannot attend and concentrate[,] . . . cannot reliably follow instruction and, while he can engage appropriately with others, his engagement is just off enough so as to be noticeable[,]" and "does not appear to have the ability to manage any funds." Tr. 1427. The ALJ found Dr. Wilcox's opinion was "unpersuasive" because it was not supported by the "longitudinal treatment history." Tr. 48. The ALJ observed that Dr. Wilcox had not reviewed records after June 26, 2020, and cited to VA records of a March 2021 mental functional assessment "indicating a circumstantial thought process, yet fair insight, intact judgment, coherent thought content, normal speech, appropriate appearance and behavior, normal orientation, and a euthymic mood with a congruent affect." Tr. 48-49 (citing Tr. 1273). The ALJ also cited counseling visits from June and July 2021, "indicating attention, concentration, thought process, and thought content were all within normal limits." Tr. 49 (citing Tr 1430–46); *see* Tr. 1439, 1441, 1443, 1445. Additionally, the ALJ found "[t]his level of limitation with an opined complete inability to attend and concentrate is also inconsistent with the treatment exam findings generally noting [plaintiff] was alert, awake and normally oriented, often with no focal neurological deficits, as well as [plaintiff's] reported

activities including golfing for recreation," and cited to medical records from March and June 2021. Tr. 49 (citing Tr. 1247, 1271).

The ALJ further found that plaintiff's report to Dr. Wilcox that "he was capable of doing chores including making breakfast, emptying the dishwasher, vacuuming, and yard work . . . appears inconsistent with the opined inability to attend or reliably follow instructions." Tr. 49 (citing 1425–26). The ALJ also noted that contrary to plaintiff's "alleged issues with interaction, he reported having friends who come to visit." Tr. 49. Finally, the ALJ observed that while Dr. Wilcox noted the claimant had poor judgment, the report otherwise indicates plaintiff had normal and intelligible speech and concrete abstract reasoning, he was thoughtful, he had no difficulty completing Serial 7s, and "in terms of attention and concentration," he "performed adequately on a digit memory task, which also appears inconsistent with the opined levels of limitation." *Id.* Thus, the ALJ explained how Dr. Wilcox's opinion was unsupported and inconsistent with other information in the record and did not err in rejecting Dr. Wilcox's opinion on that basis.

## III. Subjective Symptom Testimony

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281 (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The proffered reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750

(9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, available at 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1–2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

The ALJ recounted plaintiff's symptoms and then found that plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 46. The ALJ focused largely on plaintiff's activities, finding that they were internally inconsistent and inconsistent with his allegations of severe pain and disabling symptoms. Tr. 46; *see* Tr. 77–78 (plaintiff's hearing testimony describing daily pain and stiffness in neck, lower back, hands, and knees). In assessing a claimant's testimony, the ALJ may "consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct" and "whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Molina*, 674 F.3d at 1112.

For instance, the ALJ observed that plaintiff stated he can walk five blocks, but testified that he golfed 18 holes, which he described was five miles, once per month. Tr. 46, 81. The ALJ observed that plaintiff also reported performing household chores, including cutting wood, carrying it onto a dolly, and unloading it, and was able to do the dishes, laundry, dress himself, shower, cook, feed the dogs, and load and unload the dishwasher. Tr. 46; *see* Tr. 83. The ALJ noted that plaintiff complained of the inability to get along with others and not having a social life, but reported playing pool and having a drink with others in person "every day whenever I see them." Tr. 442. Finally, the ALJ observed that plaintiff was able to drive and go out independently, shop in stores, and went out "almost daily," which "suggest[ed] the ability to plan and execute a route, attend to task, and function in a public setting." Tr. 46 (citing Tr. 433, 441).

The ALJ also noted that plaintiff did not receive any injections, did not engage in physical therapy, and used no braces or other assistive devices, and saw a doctor approximately a year ago for a "checkup." Tr. 45; *see* Tr. 78–79, 81. These conservative post-surgical treatment conditions are a valid basis to reject plaintiff's subjective symptom testimony. *See Smartt v. Kijakazi*, 53 F.4th 489, 500 (9th Cir. 2022) (finding ALJ properly relied on post-surgical conservative treatment to discount the plaintiff's subjective testimony when such treatment consisted of "physical therapy, temporary use of a neck brace and wheelchair, and ongoing pain medication").

Because the ALJ provided clear and convincing reasons, supported by substantial evidence, to discount plaintiff's subjective symptom testimony, there is no error.

## IV. Lay Witness Testimony

The ALJ acknowledged the statements that were submitted by plaintiff's wife and mother. Tr. 44-45, but "identified no basis to discount" them, as plaintiff correctly observes. However,

the reports by plaintiff's wife and mother are similar to plaintiff's subjective symptom complaints, and the ALJ discounted plaintiff's complaints with clear and convincing reasons. Those same reasons constitute germane grounds for discounting the lay witness statements, and any error in failing to specifically address the lay witness testimony is therefore harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1117 (9th Cir. 2012) ("Where lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony, it would be inconsistent with our prior harmless error precedent to deem the ALJ's failure to discuss the lay witness testimony to be prejudicial per se."); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (affirming that if an ALJ provides clear and convincing reasons for rejecting a claimant's subjective complaints, and a lay witness's testimony is similar to those complaints, it follows that the ALJ has provided germane reasons for rejecting the lay witness testimony).

**CONCLUSION**

The Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED August 28, 2026.

/s/ Youlee Yim You

Youlee Yim You
United States Magistrate Judge